148 So.2d 597

**LOUISIANA STATE BAR ASSOCIATION**

v.

**Henry F. YODER.**

No. 45855.

Jan. 14, 1963.

A. Leon Hebert, Baton Rouge, John Pat. Little, New Orleans, Walter G. Arnette, Jennings, A. K. Goff, Jr., Ruston, Pat. W. Browne, Sr., New Orleans, for petitioner.

G. Harrison Scott, New Orleans, for respondent.

FOURNET, Chief Justice.

The court's Committee on Professional Ethics and Grievances instituted this proceeding against Henry F. Yoder, an attorney practicing in New Orleans, Louisiana, under the original jurisdiction vested in us by Section 10 of Article VII of the Louisiana Constitution of 1921, seeking his disbarment on charges of professional and ethical misconduct.

After the committee's investigation of numerous complaints lodged against him, the respondent was advised by registered letter dated June 1, 1961, it would grant him a full hearing on seventeen specifications as set out in the letter, and, after such hearing, the committee filed a petition—to which it attached and made a part the letter of June 1, 1961—in which it alleged it had concluded unamimously the respondent had been guilty of the misconduct set out in Specifications Nos. 4, 5, 11, 12, and 14, but reserved its right to proceed further in proof of his alleged misconduct as set forth in the remaining specifications.

After issue was joined by the respondent's answer, which is, in effect, a general denial of the charges as set out in the seventeen specifications, this court appointed the Honorable James H. Drury, an attorney of New Orleans, as the Commissioner to take the

evidence and report his findings of fact and conclusions of law in accordance with the procedure set out in the rules adopted by this court pursuant to our constitutional authority in such matters.[1]

During the course of the hearings before the Commissioner, the committee filed a supplemental petition setting out sixteen additional specifications as further grounds of misconduct warranting disbarment, which charges were also given a full hearing by the Commissioner, who rendered his report and findings with respect to all thirty-three charges on June 15, 1962.

In this report the Commissioner took the position that although the committee had, in its first petition, specifically reserved its right to proceed further with respect to proving the misconduct set out in some twelve of the original seventeen specifications, it had, in effect, abandoned them.[2] In so far as specifications Nos. 4, 5, 11, 12, 14, and the sixteen additional specifications set out in the supplemental petition were concerned, the Commissioner found the defendant guilty on eleven of these counts,[3] and not guilty on ten.[4]

The respondent did not except to the Commissioner's report within twenty days from the time of its filing, as required under the rules, and the Commissioner's findings of fact and conclusions of law stand confirmed and have become final as to him in so far as the eleven counts on which he was found to be guilty are concerned. Louisiana State Bar Association v. Woods, 243 La. 94, 141 So.2d 828; Louisiana State Bar Association v. Wheeler, 243 La. 618, 145 So.2d 774. However, the committee did timely except to the report in those instances in which the Commissioner found the defendant to be not guilty of the specifications alleged, as being contrary to the facts and evidence and not well-founded in law, although no mention is made of the Commissioner's ruling with respect to the committee's abandonment of the twelve specifications set out in Footnote No. 2.

As pointed out in his report, the conduct of the defendant as reflected by the evidence adduced in establishing his guilt on eleven specifications disclose he acted "To the detriment of his clients and to others with whom he was dealing, whether they were clients or not; he cancelled mortgages

---

1. See, Section 10 of Article VII of the Louisiana Constitution of 1921, and pages 377–389 of Volume 21 of the Louisiana Revised Statutes, together with appropriate supplements thereto, particularly Section 9 of Article XIII of the Articles of Incorporation of the Louisiana State Bar Association.

2. Specifications Nos. 1, 2, 3, 6, 7, 8, 9, 10, 13, 15, 16, and 17.
3. Specifications Nos. 4, 5, 14, 21, 22, 23, 24, 26, 27, 28, and 30.
4. Specifications Nos. 11, 12, 18, 19, 20, 25, 29, 31, 32, 33.

by notarial acts without having the notes; he paraphed notes without mortgages in conjunction therewith; he used duplicate notes executed by the same makers and transferred them for consideration; he took advantage of fellow attorneys with whom he had prior dealings, said advantage being taken under note transactions; he admitted executing checks when he did not have the funds to have the checks honored; he represented to two individuals, one of whom was a close friend having been his roommate in the Marine Corps during the years 1942, 1943, and 1944 * * * that he was the owner of certain lots in New Orleans and that he would sell said lots to them for the sum of $4,500.00 plus costs, and convinced them to pay him the sum of $4,527.25, and that at said time he did not own the lots and was not in a legal position, at that time or in the foreseeable future, to transfer valid title to the lots, and that he has never since conveyed valid title to the lots nor refunded to the friends, who incidentally were also clients, the purchase price of said lots; he has refused to give accountings when requested so to do by his clients; he negotiated notes belonging to clients when he knew that it was improper to do so; he allowed complaints to be made to the District Attorney for the Parish of Orleans against him instead of settling with the complainants, his excuse being that at the time the complaints were made he was not in a position to make amicable settlements.

"He has made many admissions and previously offered to resign as a member of the Bar of the State of Louisiana.

"He made a statement at the conclusion of his testimony to the effect that, during the entire situation set forth by the complaints, he has never done anything except to admit guilt where he thought that he was guilty; that he attempted to get help to avoid a catastrophe; that he discussed his problems with the Bar Association before any charges were made against him by the Bar Association; that he has repaid some forty to fifty thousand dollars over the last three years; that he is continuing to repay certain of the losses over a monthly period in cooperation with an ex-partner."

We have carefully reviewed the record in the case, particularly with respect to the eleven specifications under which the respondent was found to be guilty by the Commissioner, and we are in complete agreement with him that under them the committee clearly established respondent's guilt in these respects.

The respondent, however, appearing before this court through counsel who argued in written brief, seeks to minimize the force of the findings of the Commissioner and the implications inherent therein as warranting disbarment, and to establish that a suspension only in this case would be sufficient punishment to satisfy the ends of justice, particularly since the fall of 1959 the re-

spondent has imposed upon himself a suspension and has not engaged in the practice of law.

. The Commissioner in his report emphasizes that while it is a "heart-rending and unpleasant task" to sit in judgment on allegations of improper conduct by a member of the Bar, in such matters we have a duty not only to the other members of the Bar of the state as a whole—who endeavor at all times to practice within the high ethics of our honored profession—but to the public which relies on the integrity and honesty of lawyers with whom it deals. After our review of the evidence and exhibits in this case, we can but concur with the Commissioner's conclusion that respondent's conduct from January 1954 through July 1960 leads to the inevitable conclusion that he "has no regard for the reputation of either himself as a lawyer or for other members of the Bar, or for the public represented by him and by the Bar, and no regard for his clients' money or their rights;" further, that "notwithstanding his contriteness, his making of partial restitution and his offer to resign and his asking for mercy and forgiveness now that all of these harms have been done," such conduct "indicates that the respondent lacks the basic integrity necessary to be rehabilitated in the proper practice of law. * * * His was a case not of several mistakes and then a change of ways; he treated many clients with the same disregard. He stated in his testimony he was 'caught in a trap.' The answer to that statement is that the trap was created by himself."

Since we are of the view that the defendant should be disbarred, it would serve no useful purpose to pass on the committee's exception to the Commissioner's report. In fact, as pointed out in Louisiana State Bar Association v. Woods, supra, "anything that might be said on the subject matter of these exceptions would be purely advisory in nature."

It is, therefore, ordered that the name of the respondent, Henry F. Yoder, be, and it is hereby, stricken from the roll of attorneys, and his license to practice law in Louisiana is herewith cancelled. The respondent is to bear all costs of this proceeding.